## Richardson v. Commonwealth.

### (Decided December 18, 1923.)

## Appeal from Clark Circuit Court.

1. Witnesses—Accused May Show that he Procured Arrest of Commonwealth's Witness for Giving Him a Cold Check.—In a prosecution for sale of intoxicating liquor, the court erred in refusing to permit defendant to testify that prior to his indictment he had the Commonwealth's witness arrested for giving him a cold check, as it bore directly upon the moral principles of the witness, his character, and his veracity, and served to enlighten the jury as to whether the procurement of the indictment against accused and his testimony against him were actuated by motives of retaliation or revenge.

2. Criminal Law—Exclusion of Impeaching Evidence Held Prejudicial.—In a prosecution for sale of intoxicating liquor, where there was only testimony of one witness as to sale, it was prejudicial error to exclude testimony of defendant that prior to his indictment he had the Commonwealth's witness arrested for giving him a cold check, though several other witnesses testified as to defendant's reputation as an unlawful trafficker in intoxicating liquor.

3. Intoxicating Liquors—No Conviction on Evidence of Reputation.—Evidence of reputation as an unlawful trafficker in liquor, standing alone, is insufficient to establish guilt of sale of liquor.

RODNEY HAGGARD for appellant.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment of the Clark circuit court entered upon the verdict of a jury whereby the appellant, Fred Richardson, was found guilty of the offense of unlawfully selling intoxicating liquor, to-wit.: whiskey, not for "medicinal, scientific, mechanical or

sacramental" purposes, and his punishment fixed at a fine of $100.00, and imprisonment of thirty days in jail. The indictment charging the appellant with the offense in question was found upon the testimony of a single witness, one Kidd Allen, who claimed, in later testifying on the trial, to have purchased of the appellant the whiskey for the sale of which the latter was convicted, and who alone of the several witnesses then testifying claimed to have been present at, or to have any knowledge of, the sale.

The only error assigned by the appellant for the reversal of the judgment of conviction, is the rejection by the trial court of alleged competent and material evidence offered in his behalf on the trial. And in order that this contention may be clearly understood, we find it necessary to make a brief statement of the evidence furnished by the testimony of Allen, the Commonwealth's chief witness, and that of the appellant as presented by his own testimony. Allen testified that he purchased of the appellant in Baldwin's jewelry store in the city of Winchester the whiskey in question, but neither the date of the purchase, the quantity of whiskey purchased nor the price he paid for it was remembered by him. When asked, however, if he did not buy the whiskey in September or October, 1922, he answered "as I remember, it was." After repeatedly saying that he did not remember the quantity of whiskey he purchased of the appellant, when asked, "Have you any idea?" he replied, "I think a quart, I believe." But although repeatedly pressed to state what he paid for the whiskey he wholly failed to name the amount, saying in reply to each question that he could not remember how much it was. He finally stated, however, that he thought whatever amount he paid for the whiskey was embraced in a check he gave the appellant, but that he did not know whether the check was cashed by the latter.

The appellant when introduced as a witness contradicted Allen by a specific denial of the making of the sale of whiskey to him. The evidence excluded by the trial court, and to the exclusion of which the appellant duly excepted, the latter first attempted to introduce on the cross-examination of Allen by asking him through counsel the following question: "Is it not a fact that just prior to the time you went before the grand jury that Mr. Richardson had sworn out a warrant for your arrest for giving him a cold check for two hundred dollars?"

The question was immediately followed by an objection from counsel for the Commonwealth to its competency, which objection the court sustained and refused to permit the question to be answered by the witness, and to this ruling the appellant took an exception.

The appellant again offered to introduce this evidence on his examination in chief, at which time he was asked by his counsel the following question:

"Did you a short time prior to the April term of the Clark circuit court, have Kidd Allen arrested on a warrant charging him with giving you a cold check for about two hundred dollars?"

"Objection was made to the question by the Commonwealth through its counsel and sustained by the court, excepting to which ruling the appellant entered of record an avowal that the witness, if permitted to respond to the question, would answer "yes."

The questions presented for decision by the appeal are: (1) Was the exclusion of this evidence by the trial court error? (2) And if so, did its exclusion prejudice the appellant in any of his substantial rights? With his usual candor the assistant attorney general briefing the case concedes the competency of the rejected evidence, but insists that the error committed by the court in excluding it was not prejudiced to the appellant.

The evidence in question was not offered for the purpose of contradicting any statement contained in the testimony previously given by the witness, Allen, or to prove his guilt of crime, but its object was to impeach his credibility as a witness by showing that shortly before the return of the indictment against the appellant, which had been found upon the testimony of Allen alone, he had acted dishonorably in a transaction with the appellant, that resulted in his arrest by the latter's procurement; which facts, had their truth been established by the evidence offered, would have had a direct bearing upon the moral principles of the witness, and his character for veracity, and also served to enlighten the jury as to whether or not his procurement of the indictment against the appellant and his testimony against him on the trial were actuated by motives of retaliation or revenge; and thereby have enabled them from the fuller understanding thus obtained of the testimony of the witness, to better determine its truth or falsity.

The authorities are in accord as to the competency of such evidence. The rule declaring its admissibility

is thus concisely stated in Roberson's Ky. Crim. Law and Procedure, vol. 2, section 986: ''While a witness can not, as has been stated, be compelled to answer any question that would tend to expose him to any kind of punishment or to a criminal charge, yet he may, for the purpose of impeaching his credibility, be cross-examined as to facts tending to disgrace him, although such facts are irrelevant and collateral to the main issue.''

In contradicting a witness, however, a different rule must be applied; for as said in section 987, of the volume, *supra*:

''It is only in such matters as are relevant to the issue that a witness can be contradicted. He can not, therefore, be cross-examined as to any fact which is collateral and irrelevant for the purpose of contradicting him by other evidence if he should deny it, and thereby to discredit his testimony. . . .''

The rule permitting inquiry into collateral matters for the purpose of impeaching a witness has been recognized in numerous cases decided by this court; one of these cases was that of Rutherford v. Comlth., 2 Met. (59 Ky.) 387, in which, in condemning as error the action of the trial court in refusing to permit the Commonwealth's chief witness to answer on his cross-examination certain questions, asked for the purpose of impeaching his credibility as a witness by showing his offer to accept from the father of the defendant a bribe to leave the State and not appear as a witness against the latter, we in part said:

''An answer of those questions in the affirmative would, by tending to disgrace him, have diminished his credibility. The object of a cross-examination is to test the credibility of the witness and the truth of his statements. The motives by which he is actuated, his prejudices, and his inclination, may be inquired into. We are of the opinion, therefore, that the court should have allowed these two questions to have been answered by the witness. . . .''

In the later case of Leach v. Comlth., 129 Ky. 497, we again had occasion to pass on the same question. The appellant Leach appealed from a verdict and judgment convicting him of the murder of one Gayle. The excluded questions were with respect to the illicit relations alleged to have existed between Rebecca Clark, the Commonwealth's chief witness, and the deceased, and they were

not propounded to her, but to several other witnesses; their object being to impeach her credibility as a witness. We held that the ruling of the trial court in the matter of excluding the questions was error, but that by reason of the absence from the record of avowals showing what the answers of the witnesses interrogated would have been, the error did not authorize the reversal of the judgment of conviction.

In passing upon the competency of the questions excluded and evidence attempted to be elicited we said:

"It would have been competent to have inquired of Mrs. Clark what the relations had been between herself and the deceased, and she might have been required by the court to disclose them, although improper; and this fact might have been shown independent of her by other witnesses if she was not questioned on the subject, or, if questioned, had denied the immoral relations. Morrison v. Comlth., 24 R. 2423. It is proper to permit, and if necessary, to require, a witness to relate his or her relations with the parties to the litigation, and in Commonwealth cases, with the accused or the prosecuting witness, or the deceased if the prosecution is for homicide, for the purpose of showing his bias or prejudice or interest in the result of the trial, so as to enable the jury to place a proper estimate upon the weight that should be given to his evidence. We do not mean to be understood as declaring that a witness may be required to answer a question that would subject him to a criminal or penal prosecution, but the fact that the answer may degrade, disgrace, or humiliate a witness will not excuse him. Underhill on Criminal Evidence, section 248; Greenleaf on Evidence, section 450. This rule does not conflict with section 597 of the Civil Code of Practice, providing, among other things, that a witness may not be impeached by evidence of particular wrongful acts. . . . Under the Code, as construed in many other cases, a party cannot impeach the testimony of a witness by evidence of specific acts, with the exception mentioned in the section, *supra*. To ask a witness questions for the purpose of impeaching his credibility or morality is one thing and to make inquiries that will show his interest, bias, or prejudice is another, although in some respects the end sought to be accomplished by each line of interrogation is the same. . . ."

The authorities, *supra,* are fully supported by the following additional cases, all arising in this jurisdiction: Burdett v. Comlth., 93 Ky. 76; Roberts v. Comlth., 14 R. 219; Warren v. Comlth., 18 R. 141.

As tested by the principles announced by the numerous authorities, *supra,* the competency of the questions excluded by the trial court is free of doubt. The only question remaining to be determined is, whether the error committed by that court in excluding them, so prejudiced the appellant in any of his substantial rights as to compel the reversal of the judgment.

We think this question also free of doubt. As previously stated the only witness produced by the Commonwealth or prove the sale of the whiskey for which the appellant was indicted, was Kidd Allen. We do not overlook the fact that two or three other witnesses testified that the appellant's reputation was that of an unlawful trafficker in intoxicating liquors; but while such evidence is by statute given substantive force, after all is said, its value as evidence lies in its corroborative effect. Standing alone it is insufficient to establish one's guilt of a sale of liquor. There must, in addition, be evidence of an actual sale of the liquor; and while it cannot be said that there was in this case no evidence of its sale by the appellant, when it is considered that the only evidence of such sale was furnished by the witness Allen, whose testimony was so indefinite as to leave in doubt the date of the sale and quantity of liquor sold, and wholly fail to prove the price agreed to be paid for it, or that it was paid for at all, the importance to the appellant of the evidence excluded by the trial court can readily be understood, as its probative effect upon the credibility of Allen as a witness, might have served to show that the vagueness of his testimony was due to bias of mind superinduced by his prejudice against or ill-will toward the appellant, rather than to a faulty memory. In our opinion the exclusion of the questions referred to the evidence it was avowed they would produce, was clearly prejudicial to the substantial rights of the appellant. Hence, the judgment is reversed and cause remanded to the court below, with directions to grant the appellant a new trial, and allow such further proceedings as will not be inconsistent with the opinion.