THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES EDWARD NESTER, Defendant-Appellant.

Fourth District   No. 12927

Opinion filed August 5, 1976.

Richard J. Wilson, of State Appellate Defender's Office, of Springfield, for appellant.

Paul R. Welch, State's Attorney, of Bloomington (G. Michael Prall and Stephen M. Deitsch, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

Defendant, Charles Nester, was convicted of burglary, armed robbery, and attempted murder upon jury verdict (Ill. Rev. Stat. 1973, pars. 19—1, 18—2, 8—4, 9—1), and received the respective concurrent sentences of 4 to 12 years, 6 to 18 years, and 10 to 30 years. On this appeal, he argues that the trial court erred in limiting defense counsel's cross-examination of a State's witness, and that his sentences were excessive in relation to the sentences received by an accomplice.

The victims, Paul McCandless, Debbie Suttle and Tom Prindiville, were the principal witnesses for the State. At about 9 p.m. on September 7, 1973, Paul McCandless, Debbie Suttle and Tom Prindiville left McCandless' apartment to go to the Red Lion, an entertainment club. Upon their departure, they locked both doors to the apartment. Upon their return around midnight, McCandless, followed by Ms. Suttle and Mr. Prindiville in that order, went up the stairs to the apartment and approached the door. As McCandless opened the door, he and Ms. Suttle were pulled into the apartment. There were four men in the room, including the defendant, and each carried a handgun.

After McCandless and Ms. Suttle were placed up against the wall, Prindiville began running down the stairs. One of the men shouted, "Stop him, don't let him get out!" and one of the four men followed by the defendant stepped out on to the stairwell landing. While McCandless could see both men on the landing raising their arms in motion to fire down the stairwell, he could not actually see their hands. He next heard three or four shots, but did not specifically observe either person on the landing fire a gun. Ms. Suttle also heard the shots but, like McCandless, she could see their bodies but not their hands.

After the shooting stopped, the defendant and the other man came back into the apartment. While pointing a handgun at them, the defendant demanded their money. McCandless handed the defendant his wallet containing $140, and Ms. Suttle gave the defendant what money she had. The defendant told them to go into the bedroom and escorted them there. After telling them to sit quietly, the defendant left the bedroom, closing the door behind him. After remaining in the bedroom a few minutes, they came out, found no one in the apartment, and called the police. Items which had been in the apartment upon their departure, the couch, chair, two end tables, one lamp, a television set, a couple of sleeping bags, and some clothes were missing. The next morning McCandless found his wallet in a closet with the $140 missing.

Tom Prindiville testified that, as he reached the top of the stairwell landing, he could see three or four people with guns in the apartment. He slammed the door and ran down the stairs to get help. He then heard some people come to the top of the landing and heard some shots. He made it about halfway down the stairs before he fell and ended up lying at the bottom of the stairs. Upon looking up, he saw two people re-enter the apartment. He then ran across the street and eventually got help, whereupon he was taken to the hospital by ambulance. Mr. Prindiville was treated for two bullet wounds in the left shoulder area.

. Defendant first alleges error in the trial court's limitation of defense counsel's cross-examination of Paul McCandless. On cross-examination, defense counsel questioned witness McCandless as to his present residence. The State objected. Outside the presence of the jury, the State, after informing the court that McCandless was under indictment for two felonies and residing in the McLean County jail, sought a protective order prohibiting any question directed toward McCandless' present location. In granting the State's motion, the trial court informed defense counsel that the order precluded any questions on charges pending against the witness. Thereafter, in the presence of the jury, defense counsel asked whether the State's Attorneys of Cook, McLean, or any county had offered any promises or rewards for his testimony in this case, and witness McCandless said "No.".

■■ While a reviewing court will not generally interfere with a trial court's ruling concerning the latitude allowable on cross-examination of a witness unless that ruling was clearly abusive and resulted in a manifest prejudice to the defendant, (*People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286), the widest latitude should be given the defendant in cross-examining for the purpose of establishing bias of a witness. (*People v. Naujokas* (1962), 25 Ill. 2d 32, 182 N.E.2d 700.) A witness may be cross-examined concerning those circumstances relating to a pending charge where it would reasonably tend to indicate that his testimony might be influenced by interest, bias or a motive to testify falsely. *People v. George* (1971), 49 Ill. 2d 372, 380, 274 N.E.2d 26; *People v. Mason* (1963), 28 Ill. 2d 396, 400-401, 192 N.E.2d 835.

The principle argued by defendant is directed to establishing a possible motivation for the witness, McCandless, to testify falsely in the hope of obtaining a more favorable treatment in the disposition of charges pending against him at the time of this trial. As the State's Attorney points out McCandless was a principal victim of the burglary and the armed robbery and so had the motivation of the ordinary victim of an offense who testifies in the prosecution. The record clearly shows that McCandless joined immediately in reporting the offenses and gave the

information which permitted the police to identify and locate the defendant.

■■ We have examined *People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835; *People v. Norwood* (1973), 54 Ill. 2d 253, 296 N.E.2d 852; *People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708, and *People v. Vagil* (1973), 9 Ill. App. 3d 726, 292 N.E.2d 557. In these and other comparable cases we have discovered no instance where the rule of *Mason* and *Barr* encompasses cross-examination concerning pending charges against the victim of burglary and armed robbery. Thus, in *Mason*, the court considered the cross-examination in the light of the motivation of arresting officers who themselves became subject to subsequent pending charges. In *Barr*, the witness identifying the defendant and corroborating the details of the robbery had himself been charged with regard to his possession of the automobile of the same robbery victim but the charges were dropped. In *Norwood*, the denial of cross-examination was error as to a witness who was the only one to implicate defendant in the murder and the charges upon the same murder were dropped as to the witness. In *Vagil*, the charge of auto theft was stricken with leave to reinstate as to the sole witness who could testify concerning defendant's access to fraudulent titles. In each of these opinions, except as to *Barr*, it appears that there was substantial evidence tendered in defense. This record has no issue of identification or alibi. There is a significant difference present in this case in that the motivation cannot be said to be solely that of testifying in the hope or expectation of more favorable treatment of the witness as one charged with the offense.

■■ In the aspect of credibility of McCandless, defense counsel repeatedly attempted impeachment. On cross-examination, defense counsel attempted to impeach McCandless numerous times by pointing to apparent inconsistencies between his testimony and police reports and prior testimony. Defense counsel brought out McCandless' prior conviction for selling marijuana and that he was still on parole for that offense. Defense counsel got McCandless to admit that he was once addicted to heroin, and attempted to show that he may have been suffering from drug problems on the night in question. Despite all this, the jury chose to believe Mr. McCandless' testimony.

*People v. Steel* (1972), 52 Ill. 2d 442, 288 N.E.2d 355, involved the trial court's limitation of defense counsel's cross-examination of two occurrence witnesses. As to one occurrence witness, defense counsel asked whether any promises had been made with regard to a pending charge against him and he said "No." Since the jury was informed that a charge was currently pending, our Supreme Court distinguished the case from *People v. Barr* (1972), 51 Ill. 2d 50, 51, 280 N.E.2d 708, where,

during cross-examination, the defendant was denied the right to inquire if any charges were pending against the witness. In the instant case, as in *Barr*, defense counsel was not allowed to establish whether there were any charges pending against the witness McCandless, even though he was allowed to inquire as to whether any promises had been made.

As to the other occurrence witness in *Steel*, an objection was sustained to an inquiry as to whether the witness was accused of the murder with which the defendant was accused. Our Supreme Court concluded that the trial court should not have sustained this objection. However, the court also held that the trial court's error was harmless beyond a reasonable doubt because the witness in question had stated that no promises or threats had been made which influenced his testimony, and there was overwhelming evidence of defendant's guilt.

In the instant case, defense counsel should have been allowed to inquire as to any charges pending against the witness McCandless, and the trial court's prohibition against such inquiry was clearly erroneous. (*George; Mason.*) However, as in *Steel*, defense counsel was allowed to ask whether the State's Attorney had offered any promises or rewards for his testimony, and the witness responded in the negative.

In addition, aside from Mr. McCandless' testimony, the evidence presented at trial clearly proved beyond a reasonable doubt that the defendant committed burglary, armed robbery and attempt murder. The testimony of Ms. Suttle, Tom Prindiville and Richard Green, the owner of the apartment building, clearly proves beyond a reasonable doubt that the defendant did knowingly and without authority enter the apartment with the intent to commit theft therein. Ms. Suttle's testimony established defendant's guilt of armed robbery.

As to attempt murder, Ms. Suttle could not testify that she actually saw defendant's arm during the shooting. However, she did testify that someone, she thought the defendant but wasn't certain, yelled to get Mr. Prindiville; the defendant ran out to the landing with his companion; three or four shots were fired; and the defendant returned with his gun. Mr. Prindiville testified that, as he lay at the bottom of the stairs, he saw two men re-enter the apartment.

■■ The jury was instructed on the principles of accountability. Two theories of guilt, that the defendant actually shot Mr. Prindiville, and that the defendant was responsible for the actions of another in shooting Mr. Prindiville, were argued to the jury. At the least, the evidence established that defendant was guilty of attempt murder on a theory of accountability.

As in *Steel*, the trial court's error was harmless beyond a reasonable doubt, and the jury would not have reached a different verdict even if defense counsel had been permitted to ask McCandless whether or not

any charges were pending against him. *People v. Edgeworth* (1975), 30 Ill. App. 3d 289, 332 N.E.2d 716.

Defendant next argues that his sentences were excessive in relation to the sentences imposed upon one of his accomplices, Jimmie Don Bartlett. We have examined the sentence proceedings of Bartlett, which have been filed as a supplemental record by leave of court. Defendant was convicted of attempt murder, armed robbery and burglary, and received concurrent sentences of 10 to 30 years, 6 to 18 years and 4 to 12 years. Mr. Bartlett pleaded guilty to armed robbery and burglary and received concurrent sentences of 4 to 10 years. The record shows that he turned himself in to the police shortly after the robbery.

■■ While fundamental fairness requires that defendants similarly situated not receive grossly disparate sentences (*People v. Henne* (2d Dist. 1973), 10 Ill. App. 3d 179, 293 N.E.2d 172), the different sentences imposed upon the defendant and Bartlett have a basis in the record. Unlike the defendant, Bartlett was not convicted of attempt murder. Bartlett stood in the rear of the apartment and did not go on to the stairwell landing or fire any shots. In addition, defendant played a more active role in the armed robbery than did Bartlett. It was defendant who held a handgun on Paul McCandless and Debbie Suttle and demanded their money. After taking their money, defendant then ordered them into the bedroom. Thus, defendant's conduct was more reprehensible and justified the differences in the sentences which were imposed.

In addition, there were other differences between the defendant and Mr. Bartlett which justified different treatment. As to prior criminal record, Mr. Bartlett had been sentenced to one year of probation for criminal trespass to a motor vehicle, eluding police and driving without a driver's license, all of which arose from the same incident. Defendant had convictions for unlawful use of weapons and theft of lost or mislaid property. Also, while in the military, defendant had been sentenced to 4 years and 1 month for disobeying an N.C.O., escape, assault and larceny. Moreover, Bartlett is 11 years younger than the defendant. The defendant had not been employed for the last 6 years, while Bartlett had a record of employment.

Having found no reversible error, we affirm defendant's convictions and sentences.

Affirm.

GREEN and SIMKINS, JJ., concur.