THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES FINN, Defendant-Appellant.

First District (2nd Division)   No. 77-1218

Opinion filed December 29, 1978.

Gerald M. Werksman and Douglas K. Morrison, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Francis X. Speh, Jr., Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Charles Finn and Frank Fiarito, after a bench trial, were convicted of

syndicated gambling (Ill. Rev. Stat. 1975, ch. 38, par. 28.1—1(a) and (d)) and were both sentenced to three years probation, with Finn sentenced to periodic imprisonment for the first year. Defendant Charles Finn appeals.

The issues presented upon review are (1) whether the court erred in denying defendant's motion to suppress evidence and quash the search warrant; (2) whether the court relied upon inadmissible evidence to convict defendant; (3) whether defendant was proven guilty beyond a reasonable doubt of syndicated gambling; and (4) whether defendant was denied the right to effective assistance of counsel.

We affirm.

Lawrence J. Casey, special agent with the Illinois Bureau of Investigation, testified at trial that on February 10, 1972, he obtained a search warrant directed against the persons of Charles Finn and Frank Fiarito and the premises of apartment 2N at 9976 Holly Lane, Des Plaines, Illinois. Casey's affidavit in support of the warrant alleged the following facts: On February 7, 1972, William Deaton of the F.B.I. informed agent Casey that Charles Finn and an unknown person were receiving wagers at two specified phone numbers; that the phone company advised that these numbers were registered to a "Dan Ryan" at apartment 2N, 9976 Holly Lane, Des Plaines. Deaton told Casey that his informant revealed he had regularly placed bets with Charles Finn at various phone numbers since August 1971. In December 1971 an informant[1] provided Deaton with telephone numbers which resulted in a search warrant for an address in Rosemont, Illinois, where Charles Finn was arrested for operating a "book" and possessing numerous gambling records. Casey's affidavit further alleged that this and other information related by this informant over the past eight months proved to be factual. Pursuant to the informant's tip, agents of the Illinois Bureau of Investigation placed the Des Plaines apartment under surveillance on February 7 through February 9, 1972. On each of those days Charles Finn and Frank Fiarito were seen entering the apartment at 4:30 p.m. and leaving at 8 p.m.

At trial agent Casey further testified that on February 10, 1972, he and eight other officers entered the apartment leased to "Charles and Dan Ryan." Casey observed defendant run from a bedroom to the bathroom carrying papers in his hand. Casey followed defendant into the bathroom and a struggle ensued when Casey attempted to prevent defendant from destroying papers in the toilet. At the same time Fiarito was captured by other officers as he attempted to flee through the front door of the apartment.

Both Finn and Fiarito were placed under arrest, and the entire

---

[1] The affidavit for the search warrant and the record are unclear whether issuance of the warrants both for the Rosemont and Des Plaines addresses were based upon information provided by the same informant.

apartment was searched. The agents recovered water soluble paper from the bathroom which contained lists of universities and "point spreads" and an envelope listing various sport teams and containing a number of bets. Numerous pads, racing forms and water soluble papers were found scattered around the apartment. Agents found records of bets totaling in excess of $49,000 in the pockets of an overcoat in the apartment. Defendant wore this overcoat en route to the police station following his arrest.

Special agent Gary Long of the I.B.I. testified that during the search of the apartment the telephones rang frequently. Agent Long answered the phone and received some 12 to 15 bets between 6:40 p.m. and 7:15 p.m. that evening.

Agent Casey testified that there was no furniture in the apartment other than a table and two chairs. No beds were set up for sleeping although two mattresses were found "leaning" against a wall. It was later determined that the few personal possessions found in the apartment belonged to defendant's brother, Dennis Finn.

At the sheriff's office, Fiarito made a statement to police in which he stated that he was a previous gambling customer of defendant and defendant hired him to assist in the bookmaking operations because Fiarito was currently unemployed. Fiarito was paid $100 a week to answer phones and take bets for four hours each night. At trial defense counsel objected to the introduction of any portion of Fiarito's statement which referred to defendant. The court allowed the testimony for the limited purpose of incriminating Fiarito but stated it would not consider the testimony as evidence of Finn's guilt. Neither defendant nor Fiarito testified in their own behalf at trial, and both Fiarito and Finn were defended by the same attorney.

## I.

■■ Defendant contends the court erred in denying his motion to suppress evidence and quash the search warrant. Defendant argues the search warrant was not supported by probable cause because the officer's accompanying affidavit failed to establish the reliability of the informant. In *Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L. Ed. 2d 723, 84 S. Ct. 1509, the United States Supreme Court announced the criteria to determine the sufficiency of an affidavit filed in support of a complaint for a search warrant. The affidavit must inform the magistrate of (1) some of the underlying circumstances from which the informant concluded that things to be seized were where he claimed they were, and (2) some of the underlying circumstances from which the police officer concluded that the information was credible and his information reliable.

In *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89

S. Ct. 584, the Supreme Court further defined *Aguilar*, finding the affiant must declare either (1) that he has himself seen or perceived the fact or facts asserted; or (2) that his information is hearsay, but there is a good reason for believing it based on his previous experience with the informer's tips.

In the case at bar the affidavit filed in support of the warrant alleged the following facts: The unnamed informant had placed wagers with Charles Finn at specified telephone numbers. An informant had previously given similar information (telephone numbers) in December 1971 which resulted in defendant's arrest and a seizure of gambling material at an apartment in Rosemont, Illinois, on December 17, 1971. Pursuant to information obtained, officers of the Illinois Bureau of Investigation conducted a "stakeout" on February 7-9, 1972, and observed defendant and co-defendant enter apartment 2N at 9976 Holly Lane, Des Plaines, at approximately 4:30 p.m. and exit at 8 p.m. The agents obtained information that the apartment was leased to "Charles and Dan Ryan," and the telephone numbers provided by the informant were listed as belonging to "Dan Ryan" at the Des Plaines address.

■■ ■ We believe that taken as a whole, the affidavit in support of the warrant in this case was sufficient to inform the magistrate of the informant's reliability. The affidavit reflected that agent Casey corroborated the informant's representations that Casey received from Deaton by conducting a "stakeout" at the Des Plaines apartment. An affidavit of a police officer is sufficient to establish the reliability of an informant where the affidavit demonstrates that the informant's tip is corroborated by subsequent police information. (*People v. Hammers* (4th Dist. 1976), 35 Ill. App. 3d 498, 341 N.E.2d 471, *cert. denied* (1976), 429 U.S. 1002, 50 L. Ed. 2d 614, 97 S. Ct. 534.) Thus it was not unreasonable for the court to deny the motion to suppress evidence and quash the search warrant.

## II.

■■ Defendant contends the court improperly relied upon statements contained in Fiarito's confession which implicated defendant. In *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the United States Supreme Court held that in a joint trial of two defendants, the admission into evidence of one defendant's confession which implicates another defendant violates the second defendant's sixth amendment rights to confront and cross-examine witnesses against him. However, a violation of the *Bruton* rule does not require reversal. Where properly admitted evidence of defendant's guilt is overwhelming and the prejudicial effect of co-defendant's admission is insignificant, it is harmless error. *Schneble v. Florida* (1972), 405 U.S. 427, 432, 31 L. Ed. 2d 340, 345, 92 S. Ct. 1056; *People v. Burbank* (1972), 53 Ill. 2d 261, 267-68,

291 N.E.2d 161, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 301.

■■ In the case at bar the officer's testimony as to Fiarito's confession was merely cumulative. (See *People v. Davis* (1st Dist. 1976), 43 Ill. App. 3d 603, 613, 357 N.E.2d 96.) Moreover, the court explicitly ruled that Fiarito's confession would only be considered in determining Fiarito's guilt and would not be considered against defendant. It is a well established rule that when the trial judge is the trier of fact, it is presumed that the court considered only admissible evidence and disregarded inadmissible evidence in reaching its determination. *People v. Clarke* (1971), 50 Ill. 2d 104, 108, 277 N.E.2d 866.

### III.

■■ Defendant contends that he was not proven guilty beyond a reasonable doubt of the offense of syndicated gambling. Section 28—1.1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 28—1.1(b) and (d)) requires that in order to be found guilty of syndicated gambling, a defendant must receive or accept more than five bets or wagers upon the result of any "trial or contest of skill" with the total amount of bets exceeding $2000. *People v. Stavros* (1st Dist. 1974), 18 Ill. App. 3d 1071, 1073, 311 N.E.2d 220.

In *People v. Montes* (1st Dist. 1978), 57 Ill. App. 3d 824, 373 N.E.2d 658, defendant's conviction for syndicated gambling was upheld on appeal where the evidence at trial reflected that an officer, entering an apartment under authority of a search warrant, found betting slips on a table and observed a third person hand defendant a shopping bag which contained additional betting slips totaling more than $2000.

■■ In the case at bar defendant contends he was found guilty only upon evidence which placed him at the apartment at the time of the search. However, the record indicates the agents found betting slips scattered around the apartment which showed wagers totaling $35,000, and records of bets totaling approximately $49,000 were found in the pockets of an overcoat which defendant wore en route to the police station after his arrest. Defendant struggled with Officer Casey in an attempt to dispose of some water soluble paper in the toilet. The court noted that in reaching its decision, it also considered defendant's use of a fictitious name in obtaining the apartment and in acquiring the telephone numbers, coupled with the lack of any furniture in the apartment. The telephoned bets answered by agent Long were also noted by the court in determining defendant's guilt. The record in this instance reflects that this clearly is not a case where a defendant has been found guilty merely because he was in the vicinity of a crime. (*People v. Sawyer* (1969), 42 Ill. 2d 294, 298, 251 N.E.2d 230.) Thus it was not unreasonable for the court to find defendant guilty of syndicated gambling.

## IV.

■■ Defendant's final contention is that he was denied effective assistance of counsel because his attorney represented Fiarito and him despite their allegedly conflicting interests. The right to effective assistance of counsel guaranteed by the sixth amendment to the United States Constitution requires that such assistance be untrammeled and unimpaired by counsel's simultaneous representation of conflicting interests. (*Glasser v. United States* (1942), 315 U.S. 60, 70, 86 L. Ed. 680, 699, 62 S. Ct. 457.) However, the mere fact that defendants are to be tried jointly does not necessitate separate counsel. (*People v. Normant* (1st Dist. 1975), 25 Ill. App. 3d 536, 540, 323 N.E.2d 553.) On appeal, defendant has the burden to show that he and co-defendant had antagonistic defenses or that counsel had other conflicts of interest in defending his clients. *People v. Hardemon* (1st Dist. 1977), 46 Ill. App. 3d 1052, 1057, 361 N.E.2d 680.

■■ Defendant contends that he has met the burden of showing conflict of interest. Defendant alleges that his counsel favored Fiarito's interests over defendant's by failing to "stress" that Fiarito's confession was to be considered as evidence of Fiarito's guilt and not as evidence against defendant. The record reveals that counsel attempted to protect defendant's interest by objecting to the introduction of Fiarito's confession alleging possible prejudice to defendant. Counsel then asked for and received a ruling from the court that Fiarito's confession would not be considered as evidence against defendant. Also, during closing argument, defense counsel reminded the court that Fiarito's statements were not to be considered against defendant. The fact that defense counsel did not "stress" this point sufficiently to defendant's satisfaction does not mandate reversal of defendant's conviction. See *People v. Sweeney* (3d Dist. 1977), 46 Ill. App. 3d 858, 868, 361 N.E.2d 344.

■■ Defendant was entitled to separate counsel if he so desired, but he engaged counsel knowing that such counsel would also represent his co-defendant. We will not disturb a guilty finding on the basis of speculative conflicts of interest where there is no showing that a single attorney's representation caused prejudice to either defendant or that a different result would have occurred had separate counsel been engaged. (*People v. Bullock* (1st Dist. 1977), 51 Ill. App. 3d 149, 155, 366 N.E.2d 475; *People v. Craig* (1st Dist. 1977), 47 Ill. App. 3d 242, 247, 361 N.E.2d 736.) Thus we find counsel's joint representation of defendants does not require reversal.

For the foregoing reasons we find no reversible error.

Affirmed.

DOWNING and HARTMAN, JJ., concur.